UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEPHAN HARRIS,                        )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )         No. 4:25-cv-01552-PLC
                                       )
SGT. UNKNOWN RECTOR et al.,            )
                                       )
        Defendants.                    )

## MEMORANDUM AND ORDER

Plaintiff Stephan Harris, a self-represented prisoner, brings this action under 42 U.S.C. § 1983 against Sergeant Unknown Rector, Officer Unknown Wieble, and Warden Richard Adams, for alleged use of excessive force and deliberate indifference to a serious medical need. (ECF No. 1). He moves for appointment of counsel (ECF No. 4) and leave to proceed *in forma pauperis* (ECF No 2). For the reasons set forth below, the Court grants Harris's *in forma pauperis* motion, assesses an initial partial filing fee of $1.75, and directs service of the complaint on Rector in his individual capacity. The Court dismisses all remaining claims and denies, without prejudice, Harris's motion for appointment of counsel.

## I.    Filing Fee

Congress mandates that federal courts collect a filing fee from a party instituting any civil action, suit, or proceeding. 28 U.S.C. § 1914. Courts may waive this fee for individuals who demonstrate an inability to pay. 28 U.S.C. § 1915(a)(1). When a court grants such a waiver, the plaintiff may proceed *in forma pauperis*.

To obtain *in forma pauperis* status, a prisoner litigant must file an affidavit demonstrating his inability to pay. 28 U.S.C. § 1915(a)(1). In addition to the standard *in forma pauperis* affidavit,

a prisoner must provide a certified copy of his inmate account statement for the "6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

If the prisoner litigant lacks sufficient funds, the Court assesses an initial partial filing fee equal to 20 percent of the higher of the average monthly deposits or the average monthly balance in the prisoner litigant's account. 28 U.S.C. § 1915(b)(1). After that, the prisoner litigant must make monthly payments equal to 20 percent of the previous month's income until the prisoner litigant pays the fee in full. 28 U.S.C. § 1915(b)(2). "The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." *Id.*

In support of his motion to proceed *in forma pauperis*, Harris submitted a certified inmate account statement for the period from April 10, 2025 through September 10, 2025. (ECF No. 3). The statement reflects an average account balance of $8.30 and an average deposit of $8.75. Therefore, the Court assesses an initial partial filing fee of $1.75, representing 20 percent of Harris's average deposit.

## II.   Background

Harris is an inmate at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. (ECF No. 1 at 2). He alleges that on December 29, 2023, correctional officers tried to place him in cell 109 of the disciplinary unit. *Id.* at 3. Before they could do so, an inmate already residing in the cell declared Harris an enemy. *Id.* Harris told the officers that he wanted to return to the holding bench until staff could assign him to another cell. *Id.* In response, Sergeant Rector and Officer Wieble forced him to the ground, and Rector bent his fingers in an attempt "to taunt plaintiff into resisting." *Id.*

2

Wieble and Rector eventually placed Harris on a metal bench and gave him an enemy waiver to sign so he could occupy cell 109. *Id.* at 5. Harris does not state whether he signed the waiver but alleges that Wieble and Rector eventually put him in a different cell "to ruff [him] up" outside the view of the surveillance cameras. *Id.* The officers left Harris on the bench without access to the bathroom or drinking water. *Id.* After "what seem[ed] like an hour," Wieble and Rector summoned medical staff to evaluate Harris. *Id.* Later that week, an x-ray revealed that Harris had a broken thumb. *Id.*

### III.    Discussion

Harris alleges excessive use of force and deliberate indifference to his serious medical needs. *Id.* He seeks $3.5 million in damages. *Id.* at 6.

#### A.    Official-capacity claims

A suit against a state employee in his official capacity is merely a suit against the state itself. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Absent a waiver, the Eleventh Amendment bars suits for monetary relief against a state or its officials acting in their official capacities. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). The Court therefore dismisses Harris's official-capacity claims with prejudice because the defendants are immune from the relief sought. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

#### B.    Warden Adams

Harris sues Warden Adams in his individual capacity because he failed "to stop the practice of abusing inmates whom are in solitary confinement." (ECF No. 1 at 5).

Under § 1983, courts cannot hold supervisors liable based solely on their subordinates' actions. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citation omitted). Liability arises only when the supervisor directly participates in the constitutional violation or is deliberately indifferent

3

to a known pattern of unconstitutional conduct. *Id.* Harris does not allege that Adams personally took part in the December 29 incident, authorized the use of force, or was otherwise aware in advance of any risk to Harris. Therefore, the Court dismisses Harris's individual-capacity claims against Adams for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Sergeant Rector

Harris also sues Sergeant Rector in his individual capacity. He claims that Rector forced him to the ground, bent his fingers, and taunted him to provoke resistance. (ECF No. 1 at 3–5). Harris further alleges that Rector left him on a metal bench for an extended period of time and delayed access to medical staff. *Id.* at 5.

To state a claim for excessive force under the Eighth Amendment, a prisoner must plausibly allege that an official used force not "in a good-faith effort to maintain or restore discipline," but "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The core inquiry is the official's intent. *Id.*

Harris's allegations, liberally construed and accepted as true, support an inference that Rector acted maliciously with intent to cause harm and not merely to maintain or restore discipline. Although Rector may ultimately establish a legitimate basis for his actions, Harris's excessive-force allegations are sufficient to survive initial screening under § 1915(e)(2).

Harris also brings a deliberate indifference claim against Rector. A deliberate indifference claim has two components. First, a plaintiff must establish that he suffered from an objectively serious medical need. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."

*Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotation marks and citation omitted). Second, he must show that the defendant actually knew of but disregarded the serious medical need. *Jackson*, 756 F.3d at 1065. This requires "a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

At this early stage, Harris's allegations against Rector plausibly satisfy both prongs. According to Harris, Rector forced him to the ground, bent his fingers back despite being restrained, and subsequently left him alone on a bench without medical care. These allegations permit an inference that Rector knew he injured Harris's thumb and yet disregarded the need for medical attention.

For these reasons, Harris may proceed on his individual-capacity claims against Sergeant Rector.

###### D.     Officer Wieble

Finally, Harris brings individual-capacity claims against Officer Wieble. He states that Wieble helped force him to the ground and placed him on the metal bench. (ECF No. 1 at 3–5). However, unlike Rector, Harris does not assert that Wieble took additional actions like bending his fingers and taunting him. To prevail under § 1983, a plaintiff must establish each defendant's personal involvement in the alleged violation. *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

Even liberally construed, Harris's allegations do not plausibly suggest that Wieble acted with the malicious and sadistic intent required for an excessive-force claim. *See Hudson*, 503 U.S. at 6–7. Similarly, the complaint fails to allege facts suggesting that Wieble was personally aware of Harris's medical need. Accordingly, the Court dismisses Harris's individual-capacity claims against Wieble. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

5

IV.    **Motion for Appointment of Counsel**

Separately, the Court considers Harris's motion for appointment of counsel. (ECF No. 4). Civil litigants do not have a constitutional or statutory right to appointed counsel. *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980); *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Having considered these factors, the Court finds that the appointment of counsel is not warranted at this time. Harris has demonstrated up to this point that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court may entertain future motions for appointment of counsel as the case progresses.

V.    **Conclusion**

For the foregoing reasons, the Court grants Harris's *in forma pauperis* motion, assesses an initial partial filing fee of $1.75, and directs service of the complaint on Rector in his individual capacity. The Court dismisses all remaining claims and denies Harris's motion for appointment of counsel without prejudice.

6

16

Accordingly,

**IT IS HEREBY ORDERED** that Harris's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Harris shall pay an initial partial filing fee of $1.75 **within thirty (30) days** of the date of this order. Harris shall make his remittance payable to "Clerk, United States District Court," and include his name, prison registration number, case number, and a statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall effectuate service on Defendant Sergeant Unknown Rector in his individual capacity pursuant to the Service Agreement between the Court and the Missouri Department of Corrections.

**IT IS FURTHER ORDERED** that Harris's remaining claims are **DISMISSED**. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

**IT IS FURTHER ORDERED** that Harris's motion for appointment of counsel (ECF No. 4) is **DENIED** without prejudice.

A separate Order of Partial Dismissal accompanies this Memorandum and Order.

Dated this 5th day of November 2025.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE